UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PAUL L MUCKLE | ) | |
| Plaintiff | ) | |
| | ) | CIVIL ACTION NO: |
| V. | ) | |
| | ) | |
| WELLS FARGO BANK, | ) | |
| PRIMERE ASSET SERVICES | ) | |
| U.S BANK NATIONAL ASSOCIATION, | ) | |
| SG MORTGAGE, | ) | |
| SEAN R. HIGGINS, | ) | |
| NELSON MULLINS RILEY & SCARBOROUGH LLP. | ) | |
| MORTGAGE ELECTRONIC REGISTRATION SERVICES.) | | |
| | | |
| Defendants | ) | |

**PLAINTIFF COMPLAINT FOR MALICIOUS PROSECUTION, MALICIOUS ABUSE OF PROCESS, FALSE IMPRISONMENT, SLANDER, CONSPIRACY NEGLIGENCE, VIOLATION OF HIS FIRST AMENDMENT RIGHTS, AND INTENTIONAL INFLICTION OF EMOIONAL DURESS.**

Tort Complaint and Statement of Jurisdiction and Diversity of Citizenship

1.   Paul L. Muckle, pro se, "Muckle", the Plaintiff in the above entitled is a resident

of Massachusetts. The Defendant Sean R. Higgins is a resident of Massachusetts

and is an attorney employed with the Law Firm of Nelson Mullins Riley &

Scarborough LLP., and was acting in his individual capacity as an attorney and in

his official capacity as an agent/employee of the Law firm of Nelson Mulling

Riley & Scarborough which has its home office in Columbia North Carolina.

During the tort violations the Defendant Sean R. Higgins and the Defendants

Nelson Mullins Riley & Scarborough were the agents/attorney representing

1

Defendants Wells Fargo Bank, which is a corporation out of California, US.

Bank National Associations which is a corporation out of Ohio, and SG Mortgage

Securities, LLC, a Delaware limited liability company, and were operating within

the scope of that agency during the violations complain of.

2.  The Defendant Wells Fargo Bank was the Assignee of the mortgage of the subject

property for which the tort violations were committed in order to take possession

of, and had a Fiduciary relationship with U.S Bank National Association which is

the Trustee for the S.G Mortgage Securities Asset Backed Certificate, Series

FRE2, of which the mortgage of the subject property was a part of. The Defendant

U.S Bank National Association has a fiduciary relationship with S.G Mortgage

and is the Trustee of the S.G Mortgage Securities Asset Backed Certificate, Series

FRE2 of which the property which Muckle occupied was a part if and which was

the cause of the tort violations against Muckle. The Defendant Primere Asset

Services is a subsidiary of the defendant Wells Fargo Bank and was acting on

behalf of Wells Fargo Bank and U.S Bank National Association as Trustee For

S.G Mortgage when they illegally and forcibly entered the subject property on

May 2, 20112 and illegally changed the locks of the door without first seeking

Muckle's or a court's permission to do so, and are responsible for the vandalism,

theft, and destruction of Muckle's personal belongings.  The Defendant Mortgage

Electronic Registration Services (MERS) was the nominee for Fremont

Investment & Loans and was the holder of the mortgage of the subject property.

According to all the other defendants, MERS was in privy with U.S bank National

Associations throughout the violations complaint of.

3.  Muckle make the following tort complaint against the named defendants alleging
    that all of the name defendants are jointly and/or severally liable for the damages
    suffered on the basic of their agent/principle relationship, their fiduciary
    relationship, and conspiracy, for the tort claims of  Malicious Prosecution, Abuse
    of Process, False Imprisonment, Conspiracy, Malicious Destruction of Property,
    and Intentional Infliction of Emotional Duress.

4.  This complaint seeks monetary damages and other compensation exceeding
    $75,000 for the unlawful criminal prosecutions in which the Plaintiff, Paul L.
    Muckle, "Muckle" was arrested, charged, and convicted in the Suffolk County on
    the false criminal charges of (1) Intimidation of a witness, (2) Intimidation of a
    defense attorney, (3) Intimidation of a federal judge through threats, (4) Stalking,
    (5) threats to kill, (6) Unlawful wiretapping, and (8) Violation of a Harassment
    Prevention Order.

5.  The unlawful criminal prosecutions against Muckle were initiated by Attorney
    Sean R. Higgins on behalf of himself and the other defendants out of malice and
    without probable cause. At no time was Muckle ever a violent threat towards Sean
    Higgins.  Sean Higgins, acting in his capacity as an employee and the
    attorney/agent of the other defendants wanted to shut Muckle up and punish him
    for his continued online exposure of him and his law firms, Nelson Mullins Riley
    Scarborough's, involvement in defending the banks from their involvement in the
    mortgage and financial crisis of 2004-2009,  to shut Muckle up and punish him
    for exposing the banks' foreclosure activities and involvement in the mortgage
    and financial crisis of 2004-2010,  to remove Muckle from his home so that they

3

could foreclose and sell it without Muckle being present to protest against them, to feed attorney Sean Higgins great ego, and to remove Muckle from the home so that Higgins and his law firm could finish the foreclosure transaction and get paid.

6. On April 13, 2012, the plaintiff, Paul L. Muckle, "Muckle" was arrested at his home in Brockton Massachusetts on a criminal warrant out of Boston Municipal Court charging him with the crimes of, Count 1, intimidation of a witness, Count 2, stalking, Count 3, threats to commit a crime/ to wit to kill, and count 4, unlawful wiretapping. (Exhibit –A- 2 pages).

7. The name of the complainant in those criminal charges was the defendant to this civil complaint, attorney Sean R. Higgins, acting in his capacity as employee and agent/attorney for the other named defendants.

8. In his criminal complaint Sean R. Higgins falsely accused Muckle of making threats to him and to federal Judge Douglas P. Woodlock because Judge Woodlock had dismissed Muckle's lawsuit against Higgins clients, Wells Fargo Bank, U.S Bank National Association, and S.G Mortgage. (See Exhibit –B-).

9. The complaint falsely charged Muckle with intimidation of a witness (Sean R. Higgins), alleging that Sean Higgins was a witness to a federal criminal investigation of the alleged threats against federal Judge Douglas P. Woodlock.

10. The alleged intimidation of Sean R. Higgins as a witness to the federal criminal investigation of threats to judge Woodlock, and to Sean Higgins as a defense attorney was alleged to have been by way of Stalking, Threats to kill, and through unlawful wiretapping.

11. The complaint also falsely accused Muckle of sending Sean Higgins a veiled threat to plant bombs in his yard and mailbox during the pending of the federal suit in the federal court.

12. On August 29, 2013, after failing to get the assistance of Federal Judge Woodlock and the United States Marshal Service Protective Intelligence Unit in their diabolical scheme to indict Muckle on the false charges of intimidating and making threats to Judge Woodlock, the prosecution abandoned the false charges against Muckle for making threats to Judge Woodlock. Those two parts of the criminal allegations were terminated in Muckle's favor.

13. Also after failing to produce evidence that Muckle had made threats to Judge Woodlock, the prosecution abandon the false charges against Muckle for intimidating a witness, Sean Higgins, and instead the prosecution then pursued a charge of intimidation of a defense attorney, Sean Higgins, however, during the criminal trial Higgins still testified and lied to the jury that Muckle had made threats of bloodshed to judge Woodlock

14. On Wednesday May 21, 2014, one of the Malicious Prosecution cases for which Muckle seeks compensation for , case NO. 12-CR-2096, Violation of Harassment Prevention Order,  was terminated in favor of Muckle's, for lack of prosecution.(See Exhibit –C-)

15. On June 6, 2014 another of the criminal cases on which Muckle had been previously convicted after a jury trial, case NO. 1201-CR-1755, 'Intimidation of A Defense Attorney", that conviction was later vacated and the case terminated/dismissed in Muckle's favor for lack of District Court and Boston

Municipal Court Jurisdiction. (See Exhibit –D- relevant portion of hearing transcript page 31)

16. The conspiracy begun in 2010 when Attorney Sean Higgins sent an email to the deputy U.S Marshal Services telling them that Muckle had mentioned Judge Woodlock's name in an email to his friends. As is clear that email does not contain any type of threat whatsoever towards Judge Woodlock towards, Muckle is simply exercising his First Amendment rights to dissent. As is clear from the email, Higgins is attempting to turn Muckle into a pariah in the eyes of the U.S Marshal Protective Intelligence Unit so that they would arrest Muckle before Higgins is about to foreclose on Muckle property.  (Exhibit –E-).

17. On Saturday October 08, 2011, Attorney Sean R. Higgins sent Deputy Jonathon Lemay of the U.S Marshal Service on email in which Higgins claims that Muckle threatened him personally. As is clear from this email, Higgins is attempting to recruit the U.S Marshals in his illegal scheme to have Muckle arrested just before he is about to foreclose on Muckle's home. In this email Higgins writes, " *Jon: Attached is the latest voicemail that I received from Mr. Muckle. He left it for me on Thursday, Oct. 6, 2011. As you will see here, he threatens me personally. Also, we received the attached order from the First Circuit Court affirming the dismissal of his lawsuit. The Foreclosure sale of his property is likely to occur in the next 60-90 days. I will advise you of the date certain once it is confirmed. Thank you* ". This email gives us a stunning look into the reprehensible and criminal activities by attorney Sean R. Higgins, against Muckle for no legal reason other than that Sean Higgins and his clients, Wells Fargo Bank, SG

Mortgage, and U.S Bank National Associations wanted to enlist the law in their diabolical plot to get revenge on Muckle for Muckle's legal stance against them and to facilitate removing Muckle from his home so that they could take possession of it and sell it. Sean Higgins attempted to enlist the United States Marshal services by sending them emails in which he accused Muckle of making threats to him and Judge Woodlock, then stating *"The foreclosure sale of his property is likely to occur in the next 60-90 days. I will advise you of the date certain once it is confirmed"*. It is clear that attorney Sean Higgins is attempting to get aid from the U.S marshals to arrest Muckle just before he was about to sell Muckle's home. (Exhibit-F-)

18. As is clear, Higgins was trying to inflame the U.S Marshal against Muckle so that he could get their help to evict Muckle from his home before the foreclosure was t take place. The voicemail of which Higgins states that Muckle "Threatens me personally" are not an actionable threat, all Muckle stated was that, "There is a prison cell waiting for you in South Bay. You are going to jail for your crimes against the American people for siding with Wall Street. (Exhibit-G- voice mail).

19. On April 10, 2012, after failing to recruit the United Sates Marshal Services in his illegal conspiracy to arrest and charge Muckle in the federal system for making threats to him and to federal judge Douglas P. Woodlock, attorney Sean R. Higgins, an employee of the defendants, The Law Firm of Nelson Mullins Scarborough & Riley, and acting in his legal capacity as agent and lead attorney for the defendants Wells Fargo Bank, U.S Bank National Association, and S.G Mortgage, went and illegally conspired with the Boston Police Department, the

Suffolk County District Attorney Office, the Brockton Police Department , and other law enforcement offices to maliciously abuse the process of the prosecutorial and judicial system to slander Paul L. Muckle on false accusations that he had threatened to kill Sean Higgins and a federal judge, and to arrest and maliciously prosecute him on a number of other false criminal charges, all for the purpose of revenge and punishment, to inflict emotional and physical harm on Muckle, and with the intention to illegally evict Muckle from his home and hold him under false imprisonment so that Sean R. Higgins and his clients, the banks, could foreclose on the home without Muckle being present, and to take unlawful possession of the home without having to going through the summary process in the Housing Court for an eviction and lawful possession order.

20. During the trial the charge was then unlawfully switched and Muckle was tried, convicted, and sentenced to imprisonment for 'intimidation of a defense attorney' in violation of Massachusetts General Laws chapter 268 section 13B, (A)(3) a complaint of which the Boston Municipal Court did not have jurisdiction over, as is clearly stated on the last sentence of the complaint. "SUPERIOR COURT JURISDICTION, HOWEVER THE DISTRICT COURT HAVE FINAL JURISDICTION FOR WITNESS OR JUROR UNDER G.L C. 218, section 26.". (See Exhibit-H-)

21. Before the jury trial began Muckle was arrested at his home in Brockton Massachusetts on Friday April 13, 2012 and taken to the Brockton Police Department for booking. At the Brockton Police Department, the booking officer, in conspiracy with the arresting officer, took plain paper and wrapped it around

the screen of Muckle's cell phone and taped it so that no one could see the screen, he then placed the phone in a small plastic property bag then sealed that bag and placed it in another property bag with the other property Muckle had in his pockets.

22. After the booking at the Brockton Police station, Muckle was then transported by the arresting officer to the Brockton District Court for extradition to the Boston Municipal Court from where the criminal charges and arrest warrant originated.

23. While being transported to the Brockton District Court the arresting officer, who had conspired with Sean Higgins, the Boston Police, and the Suffolk County district attorney office told Muckle that because he had not resisted and had corporate fully during the arrest he would personally speak to the judge and request that Muckle be released on a personal recognizance from Brockton court and be allowed to go to the Boston Municipal Court on his own to answer to the warrant there in Boston so that he could be back home in time to take care of his dogs.

24. During the extradition hearing, Muckle's attorney requested that Muckle be released from Brockton and be allowed to travel to Boston on his own to answer to the warrant and charges in the Boston Municipal Court. While looking at Muckle's probation records, the clerk passed the judge a note which had bee passed to him by someone who walked into the courtroom. Upon reading the note the judge then denied Muckle's request for released on a personal recognizance, and he ordered that Muckle be transported to the Boston Municipal Court.

25. The Mittimus from the Brockton District Court directed that Muckle be transported to the Boston Municipal Court on that same day, Friday April 13, 2012.

26. However, while awaiting to be transported to the Boston Municipal Court one of the court officers in the holding and transportation department of the court, who had conspired with the other conspirators, blatantly lied and informed Muckle that the Boston Municipal Court had closed at midday and that they had been opened for only a half a day, and that Muckle would not make it to court that day, so he would have to remain in jail until the following Tuesday, April 17, 2012 because the Monday, April 16 was a holiday, Patriot's Day.

27. So instead of following the Order of the judge that Muckle be transported to the Boston Municipal Court on that same day April 13, 2012 to answer to the warrant, the court officer called the Plymouth County Sheriff and had Muckle transported to the Plymouth County Jail in Plymouth where Muckle was kept under false imprisonment until after 5:00 PM when the Boston Municipal Court was closed, then Muckle was transported to the Nashua Street Jail in Boston where he was held without bail until Tuesday April 17, 2012.

28. On Tuesday April 17, 2012, Muckle was then arraigned in the Boston Municipal Court on the false charges. The docket sheet specifically named federal Judge Woodlock as a victim to the charges against Muckle for 'Intimidation of a witness/ Intimidation of a federal judge, stalking, and threats to kill. Muckle was then released on a personal recognizance and given a bail warning to stay away from Judge Woodlock and not to contact Judge Woodlock then released on a

personal recognizance against the prosecution requested for a $20,000 cash bail.
(Exhibit –I-)

29. After Muckle was released from jail he then called the clerk office of the Boson
Municipal Court to inquire whether the court had closed at 12:00 PM on Friday
April 13, 2012. The clerk informed Muckle that he had been lied to because the
court did not close at 12:00 noon on April 13, 2012, and that the court never
opens for half a day.

30. As the evidence later shows Muckle was never under any investigation by the U.S
Marshal for making any threats to federal Judge Woodlock, the allegation was a
blatant lie by Sean Higgins who conspired with the Boston Police and the Suffolk
County District Attorney's office to make that allegation in order to gain judicial
sympathy from the judges handling the case and to ascertain that Muckle would
be treated as a pariah in the court system.

31. During the pretrial proceedings Muckle' attorney submitted a request under the
Freedom of Information Act to obtain the files from the U.S Marshal Service of
their investigation of Muckle for the alleged threats made to federal Judge
Woodlock. (-J-).

32. . Muckle's defense attorney also submitted a Motion for Discovery asking that the
Suffolk County District Attorney Officer to specifically submit information
regarding the federal investigation of the alleged threats to Judge Woodlock.
(Exhibit –K- Motion for Discovery).

33. Muckle's attorney also made several attempts to contact Deputy U.S Marshal
Jonathon Lemay to gain information from him about their investigation of

11

Muckle. The attorney received a phone call from the U.S Marshal Service

Associate General Counsel Kevin Forde advising him that while he would be

happy to provide that information their policy was only to provide said

information to the prosecutor. ( Exhibit-L- Affidavit of defense counsel)

34. The Suffolk District Attorney Office refused to turn over the U.S Marshal Service

report of their investigation of the alleged threats Muckle had made to Judge

Woodlock. The court then issued an order that the Commonwealth turned over the

information by May 13, 1013 or the case would be dismissed. However, instead

of turning over the information on the U.S Marshal investigation the District

attorney then stated that they were no longer pursuing a case against Muckle for

threats made to Judge Woodlock and that Sean Higgins was the target of the

threats..

35. However, after failing to get a copy of the investigative report from the Suffolk

County District Attorney's Office, the U.S Marshal Service Associate General

Counsel then turned over the report of their investigation to Muckle's defense

counsel. (Exhibit –M-)

36. According to the U.S Marshal Protective Intelligence Unit report which was

provided to Muckle, the Deputy U.S Marshal had received confirmation from

Sean R. Higgins that Muckle's home was secretly scheduled for foreclosure and

auction on Tuesday April 17, 2012 at 11:00 PM and that Muckle was not aware of

that fact.  (See Exhibit –N-).

37. The U.S Marshal report also stated that the Brockton Police would support the banks during the foreclosure and auction of Muckle's home. (See Exhibit –O-).

38. Muckle was held in jail under false imprisonment for four days, from April 13, 2012 until April 17, 2012 due to the illegal conspiracy to keep him away from the court to prevent his release so that Sean R. Higgins and the other defendants could have enough time to foreclose and sell Muckle's home which was scheduled for auction at 11:00 PM on Tuesday April 17, 2012.

39. As stated, the Brockton Police had also taped paper around the screen of Muckle's cell phone. Before he was transported to the Plymouth County Jail on April 13, 2012, Muckle had asked the court officer at the Brockton District Court to call his family and tell them that he was being held without bail until April 17 so he needed someone to go to his house to stay there and take care of the dogs. However, the court officer informed Muckle that he could not get any phone number from the phone because the police had taped over the screen and the policy forbade him from breaking the seal of the property bag.

40. Based on the blatant lie by the Brockton District Court officer that the Boston Municipal Court had closed at 12:00 PM on April 13, 2012, and the fact that he ordered that Muckle be transferred to the Plymouth County Jail instead of to Boston where Muckle was held until night when the court was already closed, there is no doubt that there was an illegal conspiracy between Sean Higgins, and law enforcement officials to keep Muckle under false imprisonment for 4 days to prevent him from appearing before the Boston Municipal Court judge where

Muckle would be able to get bail and release before his home was auctioned off by the defendants.

41. The transport of Muckle to the Plymouth County Jail and holding him for four days away from the Boston Municipal Court constitutes false imprisonment and abuse of process.

42. During his captivity under false imprisonment, the arresting officer from the Brockton police, Patrolman Michael Schaff then called animal rescue and went back to Muckle's home with crowbars to allegedly rescue Muckle's dogs. According to witnesses, the police officer could not get the front door open with his crowbar so he called the Brockton Fire Department to aid them. The Brockton Fire Department opened the door for the police officer and the animal rescue. After the animal rescue team took the pit bulls from the home the two police officers then used their crowbar to break into Muckle's bedroom and stole Muckle's money, his computer external flash drives and several other items. The officers then left their crowbars inside of Muckle's bedroom. The crowbars left inside of Muckle's bedroom were identified as identical to the ones the neighbors saw the police using to open the front door to the home.

43. Before the arrest on April 13, 2012, the U.S Marshal Protective Intelligent Unit had already warned Muckle that Sean R. Higgins was trying to set him up to be arrested before the foreclosure of his home and that Muckle might possible be killed by the police because of the allegations Higgins was making. The Deputy U.S Marshals who were involved had given Muckle their email address and cell phone number and instructed Muckle to call them if the police came to arrest him

14

and not to resist if the police because they did not want any bloodshed to occur. They also instructed Muckle that if he receives any correspondent from Sean Higgins or the banks that he must call them and informed them because they wanted to make sure that there was no trouble. (Exhibit –P-).

44. During his arrest, Muckle called the U.S Marshal from the police cruiser; the Deputy U.S Marshal promised Muckle that they would come to court to support him during his bail hearing because they did not agree with what Higgins was doing because they knew that Higgins was lying about the alleged threats. (Exhibit -Q-).

45. Here is the proof that the U.S Marshal protective Intelligent Unit told Muckle that they would come to court to support him because they knew that Sean Higgins was lying and trying to set him up on false criminal charges. After his release from jail on April 17, 2012, Muckle sent an email to the U.S Marshal Protective Intelligence Unit informing them of the robbery of his home and accusing them of betraying him. Muckle stated, "house broken into, $40,000 CASH in mortgage reserve stolen, my antique stolen, my computers stolen, my door destroyed. MY SANCTUARY DEFILED JUDAS HAS KISSED ME!!" (Exhibit –R-)

46. The Deputy Marshal then sent Muckle a reply email stating, "Sorry we could not be in court. You should file a police report about your property immediately. What happened in court?" (Exhibit –R- second email).

47. In respond to The Deputy U.S Marshal email asking Muckle, "What happen in court", Muckle sent them a reply email telling them about the arraignment and the

allegations that he had threatened to kill Judge Woodlock. ( Exhibit –S- bottom
paragraph, page 1-2)

48. In reply to Muckle's email accusing them of helping to set him up on the criminal
charges, the deputy U.S Marshal sent Muckle the following reply, "Jon and I had
nothing to do with this. Judge Woodlock had nothing to do with this" (Exhibit –S-
top of page 1.)

49. Muckle then sent the U.S Marshal a copy of the Police report. In reply to the
police report, the U.S Marshal sent Muckle another email stating, *I notice the
police report has nothing to do with Marshals, We did not do this.* (Exhibit-T-).

50. Also, as proof the U.S Marshal had informed Muckle that he might be killed by
the police, and that Muckle was living in fear of being killed, in respond to an
email from Muckle asking 'is this goodbye" the Marshal sent Muckle an email
stating, "Be Strong….. One day things must get better". (Exhibit –R-).

51. Sean R. Higgins could not have filed a police report on behalf of a federal judge
for crimes against that federal judge, and the police could not have charge Muckle
with crimes against a federal judge unless the federal judge himself or the federal
Marshal, FBI, or the Boston Police themselves make that complaint from
evidence they possess showing that Muckle had in fact threaten that federal judge.
It is only through an illegal conspiracy involving Sean R. Higgins, the Boston
Police, and the Suffolk County District Attorney Office could Muckle have been
charged with threatening Judge Woodlock. Therefore, based on the police report
and the federal Marshal denial of theirs and Judge Woodlock's involvement in the
charges and naming judge Woodlock as a victim, then this is prima facie evidence

against the named defendants for illegal conspiracy, slander, malicious prosecution, abuse of process, false imprisonment and illegal eviction, and intentional infliction of emotional duress and anguish.

52. The U.S Marshal Investigative report gives us a stunning look into the reprehensible and criminal conspiracy which Sean R. Higgins, Detective Mylett, and the Commonwealth engaged in against Muckle for no legal reason other than that Sean Higgins and his clients, Wells Fargo Bank, SG Mortgage, and U.S Bank National Associations wanted to enlist the law in their diabolical plot to get revenge on Muckle for Muckle's legal stance against them and to remove Muckle from his home so that they could take possession of it and sell it.  At first Sean Higgins attempted to enlist the United States Marshal services by sending them emails in which he accused Muckle of making threats to him and Judge Woodlock, as is clear from this email Sean Higgins states, *"The foreclosure sale of his property is likely to occur in the next 60-90 days. I will advise you of the date certain once it is confirmed"*. In this email, it is clear that Higgins is attempting to get aid from the U.S marshals to arrest Muckle just before he was about to sell Muckle's home,  here Higgins is also telling the Marshals that Muckle mentioned Judge Woodlock's name. Higgins was the one who instigated the federal Marshal investigation against Muckle on the false charges that he had threatened Judge Woodlock.  (Exhibits -E and F- ).

53. On 9/02/11, the United States Marshal, moving on the false allegations by Attorney Sean Higgins went to Muckle's home to investigate Muckle for threats allegedly made to Judge Woodlock. As is clear on the Marshal report, Muckle

told the U.S Marshals that he did not mean anyone any violence and that he intended to fight against the banks "legally, in court, and with paper". Please note that all redacting on the documents was done by the General Counsel of United States Marshal Services. (Exhibit –U- 4 pages).

54. Sean Higgins also went on Muckle's website and downloaded Muckle's videos about his fight against the banks and the status of his civil suit in the federal court on which Judge Woodlock was presiding over. On 10/17/11, the U.S marshal wrote another report in which it clearly stated, "MUCKLE continues to post inappropriate video on youtube.com pertaining his case in front of [judge Woodlock] The USAO has been consulted pertaining to the content of the videos and has DECLINED TO PROSECUTE". (Exhibit –V-).

55. Exhibit –V- is very revealing, it shows that the United States Attorney Office was fully aware of everything that Muckle stated about his case and about Judge Woodlock handling of the case, but all they found was that Muckle had a Constitutional right to dissent. As to the Marshals claim that Muckle stating that he would not permit an eviction to take place without bloodshed, first of all, that alleged threat was not made towards anyone, and secondly, the Marshal declined to mention that it was they who had informed Muckle that he would be killed if he refused to vacate the property, and Muckle had replied, "Then they will have to shed my blood because I will not vacate my property". Clearly the U.S Marshal was trying to intimidate Muckle then lied about it. At no time did Muckle ever made any threats to Judge Woodlock or anyone else. The United States Attorney

was fully aware of everything Muckle said, and they did not find any actionable

threats from Muckle, so they "DECLINED TO PROSECUTE"

56. On 3/22/2012, Sean Higgins notified the U.S Marshal that they were about to

foreclose on Muckle's home on 4/17/12. As the Marshal report clearly States,

"DUSMS has received notification that Muckle's home will be auctioned off on

4/17/2012 at 11:00 AM. Muckle is unaware of this fact....."( please refer to

exhibit -N-)

57. The U.S Marshal report of 2/23/2012 stated, on the second paragraph,"...

MUCKLE states that if "they" come to evict him and remove him from his home

that he would not be violent. He did state however that he would not willingly

leave his property." This report contradicts the Marshals other report about

Muckle saying there would be bloodshed.. (please refer to exhibit -P).

58. On 04/02/2012, the United States Marshal Services submitted another

Investigative Report which is very stunning and has impeached Sean R. Higgins

and the Commonwealth. On the second paragraph beginning on line 4, the United

States Marshal Protective Intelligent United clearly states, 'MUCKLE has not

directly threatened any USMS protectee, however he has continued to direct

behavior rising to the level of IC towards, _____(names redacted). and _____

have been in contact with the USAO ON SEVERAL OCCASIONS AND THEY

REFUSED TO TAKE ANY LEGAL ACTION"... (See Exhibit-W-) This report

by the U.S Marshal is stunning! It not only states that Muckle had NOT

threatened Judge Woodlock, who is a "USMS protectee" , but it also shows that

the USAO, the United States Attorney Office did not find any credibility to

Higgins allegations that Muckle had threatened anyone..

59. It is also very important to note that on the last sentence of Exhibit –W- the U.S

Marshal wrote, *".. We do not underestimate his capabilities despite our rapport*

*with him".* This statement by the United State Marshal Protective Intelligent Unit

is very revealing; the revealing thing is that they used the words, "Our rapport

with him". The word "Rapport" means a relationship, one which is especially

based on mutual trust or affinity.. The word affinity means a mutual attraction or

feeling of kinship. Now what is so revealing about these choice of words the U.S

Marshal used to describe their relationship with Muckle is the fact the Sean

Higgins and the Suffolk County district attorney accused Muckle of threatening to

"kill" federal Judge Woodlock and that the U.S Marshal were investigating

Muckle for those threats.. Now everyone can see the clear falsehood in Sean

Higgins and the Suffolk County D.A's office allegations; the federal Marshal

Protective Intelligent Unit who are responsible for protecting Judge Woodlock

had a relationship with Muckle based on a 'mutual trust and a natural attraction or

feeling of kinship. This revelation and choice of words clearly shows that the

federal Marshal Service was not concerned with Muckle being any threat to their

protectee Justice Woodlock.

60. However, the proof that Sean Higgins, the Boston Police, and the Commonwealth

committed several crimes against Muckle and violated his civil rights in falsely

arresting and charging him for making threats to judge Woodlock did not end

there. On 04/10/2012, just three days before Muckle was arrested and charged on

04/13/12 for threatening to kill Judge Woodlock and Attorney Sean Higgins, the

United States Marshal Services met with Boston Police and the Brockton Police

and briefed them.. Now please keep in mind that all this was geared towards

having Muckle arrested just a few days before Sean Higgins and his bankster

clients had unlawfully scheduled Muckle's home for foreclosure sale, the sale

date was 4/17/12. The federal Marshal report of 04/11/2012, clearly states, "On

4/6/2012, MUCKLE sent a threatening voicemail as a follow up to his threatening

emails to the law firm of_____ in Boston. The voice mail contains numerous

serious direct and actionable threats. The threats are NOT DIRECTED AT ANY

FEDERAL PROTECTEE. DETECTIVE SCHAFF OF THE BROCKTON PD,

DETECTIVE MICHAEL MYLETT OF THE BOSTON PD HAVE ALL BEEN

BRIEFED, ADA _____ WAS BRIEFED DIRECTLY BY THE VICTIM,

HIGGINS.. NO FEDERAL PROCTEEE WERE MENTIONED." (Exhibit –X-).

61. Based on the United States Department of Justice investigative report it leave no

doubt that the Suffolk County District Attorney Office knew full well that Muckle

had not made any threats whatsoever towards Judge Woodlock, because they had

been fully briefed on April 10, 2012 and "NO FEDERAL PROTECTEE WERE

MENTIONED", however that fact did not prevent Prosecutor Spencer Lord from

destroying himself and committing legal suicide; on May 2, 2012, in a motion to

revoke Muckle's bail on the utterly false charges that he had violated the bail

warning, prosecutor Spencer Lord told the judge, and I quote, "Muckle is under

investigation by the federal Marshal Services  for making threats to Justice

Woodlock, THOSE THREATS INVOLVES THREATS TO KILL". (See  Exhibit

EE- hearing tape Motion to revoke bail, May 2, 2012 at 2:00 PM) What is so
intriguing about Prosecutor Spencer Lord's self-inflicted fatal wound is that he
made that lying statement on May 2, 2012, after Muckle was already in
possession of the emails from the federal Marshal

62. The federal Marshal investigative reports are stunning; they clearly tells us that at
no time did Muckle ever made any threats to Judge Woodlock, but exhibit –X- is
even more stunning, it clearly tells us that the federal Marshals did brief Boston
Police Detective Michael Mylett who filed the police report and that the
prosecutors of Suffolk County District Attorney's Office was also fully briefed
and they were clearly made aware that Muckle had not threatened Judge
Woodlock, however, on the very same day, 4/11/12, Boston detective Michael
Mylett filed a false police report accusing Muckle of making threats to Judge
Woodlock, then Detective Mylett and the Prosecutor went before a magistrate and
falsely swore under oath and got a probable cause to return a complaint against
Muckle and also got an arrest warrant for Muckle on the utterly false charges that
he had threatened to kill Judge Woodlock and that Higgins was victim/witness to
those threats to judge Woodlock.

63. However, even though Muckle had not made any actionable threats towards Judge
Woodlock that did not stop Prosecutor Spencer Lord from going before a judge
on May 2, 2012 and telling that blatant lie again. On May 2, 2012, at a motion to
revoke Muckle's bail, Assistant District Attorney Spencer Lord clearly state on
the record that the "threats to Judge Woodlock involved threats to kill". (Exhibit –
DD- Hearing tape on motion to revoke bail at 2:00 PM, May 2, 2012.)

64. On August 29, 2013, after failing to indict Muckle on the false charges of intimidating and making threats to Judge Woodlock, the prosecution abandoned the false charges against Muckle for making threats to Judge Woodlock. That part of the criminal charges was terminated in Muckle's favor. (Exhibit –Y-, relevant portion of hearing transcripts page 8, paragraph 3-9).

65. As previously stated, on April 29, 2014 the jury trial began on the charges of Intimidation of a defense attorney, Stalking, Threats to kill, and unlawful wiretapping.

66. Now, please keep in mind that on the face the complaint, Exhibit –B-, Detective Mylett and Attorney Sean Higgins are clearly and without any doubt establishing Higgins as a federal witness to the Federal Marshall investigation of the alleged threats against Judge Woodlock. Exhibits –E- and F also clearly tells us that Higgins was the instigator of the Federal Marshall investigation of Muckle. Muckle had never sent any of his emails to Judge Woodlock therefore the judge had no reason to believe that Muckle was targeting him. From these exhibits it is clear that Higgins in his arrogance thought himself as a Federal witness to a criminal investigation of Muckle, and when the USAO did not buy into the illegal scheme he was connecting he then went to the Boston Police.

67. By stating, " He, (Higgins) stated that Muckle had made threats against him and judge Woodlock", both Detective Mylett and Higgins are establishing Higgins as a witness to those alleged threats, and the face of the complaint leaves no doubt that Detective Mylett was charging Muckle with intimidation of a witness, that witness being Sean Higgins, and the victim of the threats being Judge Woodlock. But to prove

that Muckle is not the only one who came to that conclusion that Muckle was being

charges with intimidation of a witness to that federal investigation, on August 29,

2013, during the motion to dismiss the Intimidation of a witness charge, Judge

Summerville asked, "Well didn't I just hear that there was a judge that was

threatened." (Exhibit –Ypage 8, paragraph 3). Clearly Judge Summerville though

Judge Woodlock was a victim of Muckle's threats and Higgins was the witness.

68. But Muckle and Judge Summerville were not the only ones who realized that the

police report was establishing Higgins as a witness to threats to Judge Woodlock.

During the first day of the criminal trial, the trial judge, Annette Forde, stated, "Now

there is going to be a little issue that I can see from reading the facts of this case. It

seems the matter originated out of the federal Court with a judge in the Federal Court

and —". The prosecutor, Mr. Fitzgerald replied, "Yes, your Honor". The Judge

continued, "The person alleged to be the victim here? They were the alleged victims

in that case"? When the defense attorney replied, "No" the judge asked, "They were

not". The judge then asked, "Who is this alleged victim in our case?" (Exhibit –Z-

relevant portion of trial transcript page 1-17 to page 1-18) Clearly, anyone reading

the police report would believe that Sean Higgins was a witness to the alleged threats

to judge Woodlock, Judge Summerville, judge Forde, and every judge who read that

police report believed that, and that was just the impression Higgins and Mylett

wanted to give and that was exactly the charge against Muckle, "Intimidation of a

witness". However, as Exhibit -Y- shows, the prosecution abandoned that allegation

and ceased pursuing that case against Muckle  after they could not produce the

discovery evidence Muckle's defense attorney had requested

69. However, even though the prosecution had abandon the charge that Muckle had threatened Judge Woodlock, and even though the federal marshals clearly stated that Muckle had not threatened Judge Woodlock, and even thought the United States Attorney had at first "DECLINED" to prosecute Muckle then "REFUSED" to take any legal action against Muckle for based on Higgins lies that Muckle had threatened Judge Woodlock that did not prevent Attorney Sean Higgins from restating that blatant lie to try and influence and inflame the jury during Muckle's criminal trial on the other counts of the complaint. During Muckle's criminal trial on April 29, 2014 the witness Sean Higgins stated under oath during direct examination when he was answering questions of how he felt about an email Muckle had allegedly sent him, Higgins testified, This is, you know, another – (email) telling me that there is going to be  bloodshed in letting anyone take my home. I mean, I knew by October, of 11, I knew that Mr. Muckle thought that I was trying to take his home from him. So when he was sending emails like this that said bloodshed will come in Massachusetts if they take my home, he was talking about me. I mean this is him saying that he's going to – it a threat to me." The prosecution then asked, "And at this point had you contacted law enforcement?" Higgins replied...."I can't recall if I had in October of 2011 about the threats that Mr. Muckle was making against me. I spoke to with the Federal Marshall Service because they were investigating similar threats that Mr. Muckle was making as to the judge in the Federal Court." (See Exhibit -Z- relevant portion of trial transcript page 1-76, paragraph 1-25)

70. Clearly this was inflammatory and prejudicial; during this answer Higgins was telling the Jury that he "BELIEVED" that Muckle was threatening him with "bloodshed".